IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH

| | |
|---|---|
| DONALD E. HOUP, | ) |
| | ) |
| | ) 2:20-CV-00432-MJH |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| UNITED STATES OF AMERICA, C/O | ) |
| ATTORNEY GENERAL FOR THE | ) |
| UNITED STATE OF AMERICA; | |
| | |
| Defendant, | |

## OPINION

Plaintiff, Donald E. Houp, brings the within action under the Federal Torts Claim Act (FCTA) for negligence against Defendant, United States of America, for injuries allegedly sustained at a Department of Veterans Affairs Facility. Defendant moves for summary judgment. (ECF No. 36). The matter is now ripe for consideration.

After consideration of Defendant's Motion for Summary Judgment (ECF No. 36), the respective briefs (ECF Nos. 37, 44, and 46), Defendant's Concise Statement of Material Facts (ECF No. 38), Appendices (ECF No. 39 and 45), the relevant pleadings, and for the following reasons, Defendant's Motion for Summary Judgment will be granted.

   I.   Background

The background of this case offers little, if any, factual dispute. The material facts position this case well for decision on summary judgment. Mr. Houp had a prior history of right elbow pain and treatment. He then experienced an isolated event with his right elbow while a patient at Defendant's facility. Mr. Houp alleges that because of said event, he required surgery

to his elbow and sustained damages. The central dispute however is whether Mr. Houp has proffered sufficient expert evidence that Defendant's negligence caused him damages.

Beginning in November 2014, Mr. Houp sought treatment at the Veterans Administration Altoona Medical Center ("VA Altoona") for right elbow pain. (ECF No. 38 at ¶ 8).[1] Mr. Houp continued to treat at VA Altoona for his right elbow condition from November 2014 until October 2018. *Id*. at ¶¶ 8-19. Records demonstrate that treatment included corticosteroid injections and an elbow brace. *Id*. at ¶¶ 10-19. From August 2015 onward, Mr. Houp continued to report to VA medical providers. *Id*. In addition to right elbow pain, Mr. Houp complained of paresthesias and numbness in his right fingers. *Id*. During treatment for the elbow condition, providers typically noted that Mr. Houp would be eligible for subsequent corticosteroid shots every three to four months. *Id*. at ¶¶ 10, 13, 15, 16, 18, 19. From June 2017 through October 2018, Mr. Houp received four corticosteroid shots to alleviate right elbow pain, paresthesias, and numbness. *Id*. at ¶¶ 15-19. At his October 2018 visit at the VA Altoona, Mr. Houp reported sharp chronic pain in his right elbow at a level of 8. *Id*. at ¶ 19.

In late December 2018, Mr. Houp was hospitalized at the VA Pittsburgh Hospital Center for a condition in his lower left leg and underwent a leg surgery in January 2019. (ECF No. 38 at ¶ 20). Mr. Houp asserts that, during his hospitalization, a hospital employee, while pushing Mr. Houp in a wheelchair, banged plaintiff's right elbow against a door frame. (ECF No. 11 at ¶ 22). On January 31, 2019, Mr. Houp contacted the VA Altoona and reported that he was having

---

[1] Mr. Houp did not file a responsive concise statement of material facts that specifically denies or controverts the Defendant's Concise Statement of Material Facts. (ECF No. 38). Under Local Rule of Civil Procedure 56(E), "[a]lleged material facts set forth in the moving party's Concise Statement of Material Facts or in the opposing party's Responsive Concise Statement, which are claimed to be undisputed, will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party."

2

right elbow pain and constant pain and numbness in his last three fingers of his right hand. (ECF No. 38 at ¶ 38). On February 1, 2019, Mr. Houp reported to the VA Altoona for treatment and evaluation of right elbow pain. *Id*. at ¶ 40. At the February 1, 2019 appointment, Mr. Houp reported that "lat[e]ly" he "has more [right] elbow pain." *Id*. At that time, x-rays of the right elbow demonstrated progression of osteoarthritis. *Id*. at ¶ 41. On February 14, 2019, Mr. Houp then saw an orthopedic specialist with respect to claimed elbow pain and reported to Dr. David Skelley that he had elbow pain, numbness in his last three fingers, and that he had a history of elbow pain "for [approximately]1 year." *Id*. at ¶ 42. Dr. Skelley diagnosed Mr. Houp with medial epicondylitis and concluded he had the same condition as prior to January. *Id*. On March 28, 2019, a magnetic resonance imaging (MRI) on Mr. Houp's right elbow indicated calcific tendinitis, a partial tear of the medial flexor tendon complex, degeneration/tendinopathy, and an enlarged ulnar turve. *Id*. at ¶ 43. The MRI also indicated "medical epicondylitis," and "possible degeneration." *Id*.

Mr. Houp alleges that Dr. Singer, an orthopedist from outside the VA's health system, diagnosed him with compressive neuropathy of the right elbow and in June 2019 performed an ulnar nerve decompression surgery. (ECF No. 11 at ¶¶ 29-30).

In his treatment records after the January 2019 incident, the records reflect that Mr. Houp did not inform Dr. Singer or other treating physicians regarding his history of elbow pain or treatment from 2014 to 2018. *Id* at ¶¶ 46-47. In response to a request from Plaintiff's counsel, Dr. Singer prepared a "narrative report" regarding his treatment of Mr. Houp. *Id*. at ¶ 61. In his narrative report, Dr. Singer notes that Mr. Houp was initially seen by his physician assistant on May 19, 2019 for an elbow injury. *Id*. Dr. Singer's report states that "apparently he hit his elbow into a wall on his way to the operating room for a lower extremity surgery." *Id*. Dr. Singer's

3

report does not include any discussion about whether the elbow bump in January 2019 caused Mr. Houp's condition. *Id*. at ¶ 63.

The United States seeks summary judgment on two grounds: (1) that Plaintiff has failed to adduce reliable causation evidence necessary to demonstrate liability under the FTCA; and (2) that, even if Plaintiff somehow shows that he has timely disclosed evidence that the conduct alleged caused his injury, that such evidence and testimony is unreliable and should be excluded.

II.     Standard of Review

According to Federal Rule of Civil Procedure 56, a court must grant summary judgment where the moving party "shows that there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  For a dispute to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party." *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017) (internal quotations omitted).  Additionally, for a factual dispute to be material, it must have an effect on the outcome of the suit. *Id*. In reviewing and evaluating the evidence to rule upon a motion for summary judgment, the court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the" non-moving party. *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) (internal quotations omitted).  However, where "the non-moving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,'" the moving party is entitled to judgment as a matter of law. *Moody*, 870 F.3d at 213 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would

support a jury verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "Discredited testimony is not normally considered a sufficient basis for drawing a contrary conclusion. Instead, the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id.* at 256-57 (internal citation omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted). Judges are not "required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of the party." *Id.* at 251 (internal citation omitted).

   III.   Discussion

        A. Substantive Causation Arguments

Defendant argues that Mr. Houp's negligence claims fail because he has not produced sufficient causation evidence. Specifically, Defendant contends that expert testimony on causation is required here because: 1) Mr. Houp described similar symptoms including sharp daily elbow pain, numbness in his fingers, and paresthesias before the January 2019 incident; 2) Mr. Houp did not consult any physician with respect to the elbow until weeks after the alleged bump; and 3) there are other more-likely causes of Mr. Houp's condition.

In response, Mr. Houp argues that he has established causation. Specifically, he states that Defendant's employee, while pushing him in a wheelchair, caused his elbow to contact a door frame. Mr. Houp further asserts that prior to the incident the Plaintiff's elbow pain was diagnosed as medial epicondylitis, but after the incident, Mr. Houp was diagnosed with neuritis, ulnar nerve neuropathy and compression and cubital tunnel syndrome. Mr. Houp contends that treatment for epicondylitis pain involves injections and a mechanical brace while treatment for

ulnar nerve compression is a decompression surgical procedure.  Mr. Houp also maintains that no provider indicates that he sustained an ulnar nerve injury prior to the incident at the VA in January 2019.  Mr. Houp contends that he has proffered his treating surgeon, Dr. Singer, who opines that the January 2019 incident caused the nerve decompression and subsequent surgeries need to correct the same.

Defendant responds that Mr. Houp does not directly cite any causation opinion by Dr. Singer.  In particular, Defendant argues that Mr. Houp has not cited any medical opinion Dr. Singer provided with respect to causation, nor any opinion that Dr. Singer provides to the required degree of medical certainty, as required for expert opinion testimony from a physician.  Therefore, Defendant contends that Mr. Houp cannot therefore meet his burden of proof.

A plaintiff can establish a prima facie case of negligence by proving the following four elements: "(1) a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual damages." *Estate of Swift by Swift v. Northeastern Hosp.*, 690 A.2d 719, 722 (Pa. Super. 1997).[2] Under Pennsylvania tort law, a plaintiff must prove a requisite causal connection between a defendant's wrongful act and his injuries. *Reott v. Asia Trend, Inc.*, 55 A.3d 1088, 1103 (Pa. 2012). The Pennsylvania Superior Court stated, with respect to the Plaintiff's burden of proof, that: To prove causation, a demonstration that the breach of duty was both the proximate cause and actual cause of injury

---

[2] Section 1346(b) of the FTCA gives federal district courts exclusive jurisdiction over claims for money damages against the United States for those torts cognizable under state law that are committed by federal employees acting within the scope of their employment. 28 U.S.C. § 2679(b)(1); 28 U.S.C. § 1346(a), (b); see generally *United States v. Orleans*, 425 U.S. 807, 813 (1976) (limited waiver). In this case, the Court must look to Pennsylvania state law to determine whether the Plaintiff can meet his burden to prove each element of a tort. S*ee Cecile Indus., Inc. v. United States*, 793 F.2d 97, 99 (3d Cir. 1986); *Gould Elec., Inc. v. United States*, 220 F.3d 169, 179 (3d Cir.2000) (citing § 1346(b)).

[is] required. It is not sufficient ... that a negligent act may be viewed, in retrospect, to have been one of the happenings in the series of events leading up to an injury. Even if the requirement of actual causation has been satisfied, there remains the issue of proximate or legal cause. The determination of proximate cause is primarily a problem of law and must, as a threshold matter, be determined by the judge and it must be established before the question of actual cause is put to the jury. *Eckroth v. Pa. Elec., Inc.*, 12 A.3d 422, 427–428 (Pa. Super. 2010).

In a personal injury case, "[g]enerally, causation must be established through expert medical testimony." *Lattanze v. Silverstrini*, 448 A.2d 605, 608 (Pa. Super. Ct. 1982) (discussing the applicable causation standard in a motor vehicle accident case). There is an exception to the general rule requiring expert medical testimony on causation only when "an obvious causal relationship exists where the injuries are either 'immediate and direct' or the 'natural and probable' result of the negligent act." *Id*. Furthermore, "[t]he two must be 'so closely connected and so readily apparent that a layman could diagnose (except by guessing) the causal connection'...." *Id*. (quoting *Smith v. German*, 253 A.2d 107, 109 (Pa. 1969) (internal citations omitted)). Courts do require expert medical testimony on causation when "there were other equally likely or more likely causes of the injury." *Lattanze*, 448 A.2d at 609. The necessity of medical testimony depends upon the particular facts of each case. *See Florig v. Sears, Roebuck & Co.*, 130 A.2d 445, 447 (Pa. 1957).

Here, the circumstances of this case dictate that medical testimony is necessary to establish causation. If a connection between Mr. Houp's injury and the January 2019 incident was "readily apparent," expert testimony on causation may have been excused. However, causation is not "readily apparent" in this case. Mr. Houp had a significant prior history wherein he describes similar symptoms in his right elbow both before and after the January 2019 incident.

Indeed, Mr. Houp had continued receiving quarterly injections from 2014 up until his December 2018 hospitalization. The records give no indication that these injections would not have continued into 2019. Under these circumstances, factfinders need a qualified medical expert to explain and opine on how the symptoms and treatments may have been different and how the mechanism of the January 2019 may have caused the ulnar nerve compression. This is further complicated because the medical records indicate a delay between when the alleged injury and next treatment date, a month later. Dr. Singer, Mr. Houp's sole proffered expert on medical causation, stops short of any opinion which would assist the factfinder in reconciling Mr. Houp's complaints and diagnoses and the January 2019 incident. Mr. Houp's assertions that Dr. Singer has offered a sufficient opinion on causation overstates and misreads the substance of the report. In fact, Mr. Houp's assertions regarding the different treatments and diagnoses (epicondylitis versus nerve compression), only appear as argument in the briefing and are not discussed by competent experts. Further, Dr. Singer's narrative also offers no discussion of other possible causes of Mr. Houp's injury, including any appreciation by Dr. Singer of Mr. Houp's significant right elbow history. For these litany of reasons, Mr. Houp has not met his burden to establish that the January 2019 incident at the VA Pittsburgh caused any injury and/or damages to his right elbow. Because he has not established substantive support for the causation element, Mr. Houp cannot support his negligence claims.

Accordingly, Defendant's Motion for Summary Judgment will be granted.

B. Evidentiary Causation Arguments

As an additional basis for summary judgment, Defendant argues that any proffered causation evidence is unreliable and inadmissible, which dovetails with the arguments and analysis above. In particular, Defendant argues that Dr. Singer's narrative report does not

include any statement on cause and does not include any required statement that any opinions are held to a reasonable degree of medical certainty. Furthermore, Defendant maintains that Dr. Singer did not consider and reject any other causes of Mr. Houp's condition. Mr. Houp has not addressed Defendant's admissibility and reliability arguments.

   1. Admissibility

Expert opinion testimony from a physician is only proper if the opinion is held "to a reasonable degree of medical certainty." *McCann v. Amy Joy Donut Shops*, 472 A.2d 1149, 1151 (Pa. Super. 1984); *Cohen v. Albert Einstein Medical Ctr.*, 592 A.2d 720, 724 (1991) ("Expert testimony is admissible when, taken in its entirety, it expresses reasonable certainty that the accident was a substantial factor in bringing about that injury.") (quoting *Kravinsky v. Glover*, 396 A.2d 1349 (1979)). The medical certainty requirement is part of a plaintiff's burden of proof under the Federal Tort Claims Act. *See In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717, 752 (3d Cir. 1994). As the Pennsylvania Supreme Court noted, courts require that expert medical opinions be held to a reasonable degree of medical certainty because "if the plaintiff's medical expert cannot form an opinion with sufficient certainty so as to make a medical judgment, there is nothing on the record with which a jury can make a decision with sufficient certainty so as to make a legal judgment." *McMahon v. Young*, 276 A.2d 534, 535 (1971). An expert's use of the word "apparent" to characterize any conclusion on causation can demonstrate the opinion is not held with the requisite certainty, in the absence of any other more-concrete statements. *See e.g., McCann*, 472 A.2d at 1151; *Karkalas v. Martin*, 2016 WL 5920417, at *8 (Pa. Super. Ct. Sept. 6, 2016) (finding treatment notes stating that the defendant "apparently missed" the diagnosis were not sufficient to establish proximate cause on a traffic accident case). Similarly, "an expert fails the standard of certainty if he testifies that the alleged cause 'possibly'

or 'could have' led to the result, that it 'could very properly account' for the result, or even that it was 'very highly probable' that it caused the result." *Kravinsky v. Glover*, 396 A.2d 1349, 1355-56 (Pa. Super. 1979). In similar instances, where a treating physician's statements reflect that the physician only treated and diagnosed the patient—rather than conduct any analysis of causation—courts have found the plaintiff cannot meet the burden of proof on causation. S*ee Gapsky v. RTM Acquisition Co., LLC*, 2014 WL 10979830, at *2 (Pa. Super. Mar 7, 2014) (affirming summary judgment for the defendant after plaintiff offered as evidence of causation only the notes of a treating physician stating that the plaintiff's "story seems consistent with an infestation of salmonella. . .") (citing *Griffin v. UPMC*, 950 A.2d 996 (Pa.Super. Ct. 2008); and *McCann*, 472 A.2d 1149)).

Here, Dr. Singer's narrative report does not state that any conclusion was reached with any degree of medical certainty.   The narrative also states that Mr. Houp's condition was "apparently" from an impact.   Because Dr. Singer uses of the term "apparently,"  his narrative reaches no opinion on the cause of Plaintiff's injury to the required degree of medical certainty. Therefore, under the guidance and reasoning of *Gapsky* and *McCann*, the Court finds that any opinions disclosed in Dr. Singer's narrative report lack certainty and would therefore be inadmissible.

2. Reliability

Defendants next argue that any causation opinion reached by Dr. Singer would  be inadmissible because neither the narrative report nor treatment records reflect awareness and/or consideration of Mr. Houp's prior history of an elbow condition. In order to meet admissibility requirements of Federal Rule of Evidence 702, expert testimony must be based on a reliable and scientifically valid methodology; it must then be reliable applied to the facts. See *Daubert v.*

*Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-92 (1993). Four factors can guide the court in making preliminary assessments of these requirements. They are as follows: (1) whether the methodology can and has been tested; (2) whether the technique has been subjected to peer review and publication; (3) the known or potential rate of error of the methodology; and (4) whether the technique has been generally accepted in the proper scientific community. *See id*. at 593–94. In order to present a reliable expert opinion, a physician must rule out "'obvious alternative causes'" of a plaintiff's condition. *Heller v. Shaw Indus., Inc.*, 167 F.3d 146, 156 (3d Cir. 1999) (quoting Daniel J. Capra, The Daubert Puzzle, 32 Ga. L. Rev. 699, 728 (1998)); *Feit v. Great West Life & Annuity Ins. Co.*, 271 Fed. Appx. 246, 254 (3d Cir. 2008) (affirming exclusion of expert testimony where the expert "did not consider any other possible cause of death."). *See also Soldo v. Sandoz Pharm*, 244 F. Supp. 2d 434, 551 (W.D. Pa. 2003) (finding an expert must rule out "plausible" alternate hypothesis). Where an expert has no knowledge of possible alternate causes, it can indicate the opinion is unreliable. *Pritchard v. Dow Agro Sciences*, 705 F. Supp. 2d 471, 491-92 (W.D. Pa. 2010).

Here, Dr. Singer's narrative report contains no reference to facts about Mr. Houp's prior elbow symptoms and treatment from 2014 to 2018 and demonstrates he did not reject pre-existing elbow conditions as a possible cause of Mr. Houp's injury. Dr. Singer's failure to consider Plaintiff's history of elbow pain renders any potential opinion testimony unreliable because any witness providing Rule 702 expert testimony must consider and rule out the prior condition. The treatment records that Dr. Singer received from the radiologist furthermore reflected that Mr. Houp's condition had an "unclear etiology." The past history and unclear etiology dictate that Dr. Singer's opinion on causation needed to consider and reject alternate

causes. For these reasons, Dr. Singer cannot reliably provide expert testimony under Rule 702 regarding causation.

Accordingly, Dr. Singer's narrative report is unreliable and inadmissible on evidentiary grounds.

IV.     Conclusion

Following consideration of the foregoing and for the reasons stated above, Defendant's Motion for Summary Judgment will be granted. Judgment will be entered in favor of Defendant and against Mr. Houp. A separate order, pursuant to Fed. R. Civ. P. 58, will follow.

Date: October 20, 2021

Marilyn J. Horan
United States District Judge